CARNEY v. IONIA TRANSPORTATION CO.

1. CONTRACTS—MUTUALITY—DIRECTING VERDICT.

An offer to re-engage plaintiff at a stated salary as captain of a boat for a season unless a sale of the boat should occur, which was answered by an acceptance and an offer to be in readiness whenever called on, and followed by a statement of the defendant that he had not much time to talk about it and a request to come again, raises a question of fact for the jury as to the meeting of minds and the mutual binding effect of the conversation.

2. SAME—CUSTOMS AND USAGES.

A custom to dismiss or re-engage the captain at the end of the season should be considered in interpreting the effect of the conversation.

3. SAME—DEFINITE TERMS.
> The terms of the contract are not so indefinite as to invalidate it where the term of employment, the compensation, and the nature of the service were defined.

4. SAME—CONDITIONS SUBSEQUENT—BREACH.
> The plaintiff is not required to show that the boat had not been sold, to entitle him to recover on the contract, but such sale is matter of defense which should have been pleaded and proved.

Error to Wayne; Rohnert, J. Submitted April 6, 1909. (Docket No. 9.) Decided May 26, 1909.

Assumpsit by Thomas J. Carney against the Ionia Transportation Company for breach of a contract of employment. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Reversed.

*Thomas L. Dalton* (*Thomas J. Mahon* and *James S. Doyle*, of counsel), for appellant.

*E. T. Berger*, for appellee.

BLAIR, C. J. Plaintiff instituted this suit to recover from defendant damages alleged to have been sustained through the failure of defendant to carry out an alleged contract of employment, whereby the defendant, by its president, E. L. Thompson, engaged the plaintiff to sail, as master and pilot, the steamer Ionia for the season of 1906, for an agreed compensation of $1,400. At the close of plaintiff's proofs, upon motion of defendant's attorney, the court directed a verdict in favor of defendant, substantially for the reason that the contract as disclosed by the plaintiff's testimony was not mutual; it not appearing to have been binding upon the plaintiff. Plaintiff has removed the record to this court for review upon writ of error.

The nature of the arrangement made between plaintiff and defendant depends entirely upon the testimony of the

plaintiff. Plaintiff had sailed the Ionia for defendant the previous season, and at the close of that season laid the boat up at Sandusky on December 13th and came at once to Detroit. He had a conversation with defendant's president, Thompson, on the 18th of that month, wherein he alleges the contract was made for the ensuing season. He testified: That it was the general custom between owners and masters of vessels of that character to make verbal contracts, and that—

"The usual time for employing a master on steamboats is when the boat is laid up. You settle your employment right away, or they notify you that they don't want you any more, one or the other. The Lake Carriers' Association meets about the 16th of January, and unemployed captains are generally picked up about that time. The chances of employment of a master thrown out of employment after the Lake Carriers' meeting in January are not good, because at that time they usually have employed the masters they need."

That in their conversation on the 18th of December defendant's president informed him that the boat was for sale, or at least a part of her.

"'Then,' I said, 'You don't want to engage a captain until you find out whether you are going to sell her?' 'Oh, yes, I do,' he said. 'If you want her, I want you to hold yourself in readiness. If I find a buyer, you can go to Sandusky and show them around there.' I said, 'On what terms would you engage me?' and he said, 'That is all right.' I said, 'On the same terms?' and he said, 'Yes, that is all right.' I said, 'All right, sir; I will be at your service any time you call upon me.' Under what he said, 'The wages was $1,400 last year, and if that is satisfactory—' 'Why,' I said, 'all right, sir.' He said: 'I am too busy today. I haven't a great deal of time to talk to you about it, but you can come up again some time.'"

That after a talk with Capt. Pratt on March 9 or 10, 1906, plaintiff went up to see Mr. Thompson, and—

"He said that Capt. Pratt is figuring on buying an interest in the boat, and of course, if he buys her, he will

sail her; so I said, then of course I better look around for
another situation, and he said: 'Oh, no; I have not
thrown you down by any means yet. We should hear
from the captain by this time.' That was somewhere
about the 10th or 12th of March. They didn't buy an in-
terest or ownership in the boat, as I know of, during the
season of 1906."

That on the 20th or 22d of March he was informed by
Capt. McLean that he had been employed to sail the Ionia
for a compensation of $1,400, for the season of 1906, and
he learned about that time that he was not going to be
employed by the company for the coming year. That he
held himself in readiness to perform his part of the con-
tract during the season of 1906, but obtained such em-
ployment as he was able to, working about 86 days on
four boats during the season. That at the time of his
talk with defendant's president in December, he did not
understand that there were any negotiations pending at
that time which he expected to close during the year 1906.

" But he wanted to sell her. He wished to dispose of
the boat, and, if he did not dispose of her, he would take
me on, and, if he disposed of it, the persons who bought it
would probably want to select their own master. That is
the understanding I had December 18, 1905.    *    *    *
He called my attention to the fact that she was for sale
for several seasons before.

"*Q.* And this was conditioned upon her not being dis-
posed of ?

"*A.* Yes, there was that condition, if he did not
sell her.    *    *    *    At the end of the season Mr. Thomp-
son said there was $104.10 coming to me, that he would
give me $54.10 and leave the balance standing until I
made a trip in the spring, and Mr. Otis will be a witness
to that. I said that is all right, I was satisfied. He then
paid me $54.10. There was no discussion about the bal-
ance. He himself said it was $104.10. He said he could
promise me the balance when I made a trip with the boat
in the spring. The only thing that stood in the way of
my being hired was in case he sold the boat. It was dis-
tinctly understood that, if he did not sell it, I would take
the boat."

While the testimony of plaintiff is not entirely definite, and is subject to different inferences, we do not think it can be said, as a matter of law, that the plaintiff did not bind himself to perform the conditional agreement. He states that it was distinctly understood that, if defendant did not sell the boat, plaintiff would take the boat, and it is fairly inferable from his testimony that he agreed to accept $1,400, the same as the terms for the season of 1905, and to be at the service of defendant any time it should call upon him. The contract is to be construed with reference to the custom prevailing, according to the testimony of plaintiff, of employing the master at the close of the preceding season, and, where the testimony is susceptible of different inferences, those inferences are for the jury, and not for the court. We do not think it necessarily follows, because defendant's president said: "I am too busy today. I haven't a great deal of time to talk with you about it, but you can come up again some time"— that he meant thereby to postpone the consideration of the contract, since it might have referred to subsequent details.

In addition to the reason assigned by the court of lack of mutuality in the contract, counsel for defendant also contend that the direction of a verdict should be sustained because the contract was indefinite and conditional. If, as we have held, the contract was mutual and bound the plaintiff, we think the objection that it was indefinite is without force, since the term of employment and the compensation therefor and the duties to be performed were sufficiently defined. The objection that the contract was conditional is, so far as not already covered by this opinion, that there was no evidence whether or not the steamship was sold in whole or in part, and that it was incumbent upon plaintiff to show that the boat was not so disposed of before he would be entitled to any compensation whatsoever. This point was not raised in the court below and was not raised by the pleadings. The condition disclosed by the testimony of plaintiff, that his contract

of employment was to be annulled if the boat was sold, if so found by the jury, was a condition subsequent, which the plaintiff was not obligated to set up in his declaration, but was a matter of defense which should have been pleaded by the defendant if it desired to rely upon such defense. 4 Enc. Pl. & Prac., p. 627; *Redman* v. *Insurance Co.*, 49 Wis. 431 (4 N. W. 591).

Judgment is reversed, and a new trial granted.

OSTRANDER, MOORE, MCALVAY, and BROOKE, JJ., concurred.